IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
April 7, 2004 Session

## WILLIAM OSEPCZUK v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Lawrence County**
**No. 23648     Stella L. Hargrove, Judge**

_____

**No. M2003-01601-CCA-R3-PC - Filed June 22, 2004**

_____

The petitioner, William Osepczuk, was convicted of attempted first degree murder and sentenced to confinement for twenty-five years. After his conviction and sentence were affirmed on direct appeal, he filed a petition for post-conviction relief, alleging that trial counsel had been ineffective. Following an evidentiary hearing, the post-conviction court denied the petition, and this timely appeal resulted. After review, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which DAVID H. WELLES and ROBERT W. WEDEMEYER, JJ., joined.

M. Wallace Coleman, Jr., Lawrenceburg, Tennessee, for the appellant, William Osepczuk.

Paul G. Summers, Attorney General and Reporter; Richard H. Dunavant, Assistant Attorney General; T. Michael Bottoms, District Attorney General; and James G. White, II, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

In the direct appeal, this court set out the facts upon which the petitioner's conviction was based:

> During 1997 and 1998, Angelo Thomas Wilson acted as an informant and engaged in a number of "undercover drug buys" for the Lawrence County Sheriff's Department. After a period of time, it became accepted "street" talk that Wilson was acting as a drug informant.

Wilson was employed at a local manufacturing plant and worked the 10:00 p.m. to 7:00 a.m. shift. On the evening of September 9, 1998, Wilson was at a friend's house waiting for his brother to furnish him a ride to work when the [petitioner] showed up. Wilson had known the [petitioner] since childhood. After a brief conversation, the [petitioner] offered to give Wilson a ride to work and the two men proceeded to walk to a nearby motel where the [petitioner] was staying.

The two waited until a friend of the [petitioner], known as Terry, arrived in a black or gray four door vehicle. The [petitioner] informed Wilson that "he had to make a stop or two and then he was going to drop [Wilson] off at work." The [petitioner] and Terry rode in the front of the vehicle and Wilson sat in the rear.

> [The men] went to the store across the street from the motel and [the petitioner] made a pit stop at a friend's house and parked down at the bottom of the hill and he said he had to make another stop. He had some [drug] buys he had to do. . . . [They then] went out Mount Ararat Road. [The petitioner and Terry] let me out on the road [next to a soybean field]. [The Appellant] said he didn't want me to know the people. I said, "That's was fine. That's no problem." It didn't dawn on me and then [the petitioner] and them came back down the road. . . . [The petitioner] stopped the car and said, "Come on, let's go," and that's when he started shooting.

Wilson was shot in the right leg. He then began running into a bean field. He heard additional shots and realized that he was "hit all over [his] body." Wilson was struck approximately seven or eight times; resulting in gunshot wounds to his right hand, his right thumb, between his chest cavity and his rib cage, in the back, in the right leg, and twice in the left leg. After being struck by gunfire, he fell to the ground. The [petitioner] and Terry found Wilson in the field and Terry held the victim while the [petitioner] beat him in the back of the head with the butt of the gun and a stick. After a futile attempt to defend himself, Wilson withdrew further resistance. Terry remarked, "He is dead. Come on, let's go." The men then left. Wilson then managed to walk to a nearby house where he sought assistance. Wilson informed both the resident of the house and paramedics that

responded to the scene that the [petitioner] was the individual responsible for the shooting.

Law enforcement officials recovered five .45-caliber shell casings at the crime scene and observed a trail leading into the bean field. A bloody shirt with what appeared to be bullet holes, a watch, sunglasses and keys were located in the field. Officers later obtained a search warrant for the [petitioner's] room at the Traveler's Motel. A .45-caliber bullet was discovered during the execution of the search warrant. The .45-caliber weapon was never recovered.

Michael Glen Parrot testified that his apartment was burglarized in 1998, resulting in the theft of his "High Point .45-caliber automatic pistol." The weapon was a "rather large gun," nickel-plated. Mr. Parrot had saved casings from his weapon to have reloaded. After the attempt on Angelo Wilson's life, Mr. Parrot furnished the Sheriff's Department with these casings fired from his weapon. The casings were sent to the crime lab for comparison with those found at the crime scene. The examination proved that the casings had been fired from the same weapon.

The [petitioner] testified that, on September 9, 1998, he met Angelo Wilson at Donald Haygood's house at about three o'clock that afternoon. The men stayed there for approximately one hour and then proceeded to his room at the Traveler's Motel. The [petitioner] and Angelo were joined by Tim Cooper and Tiffany Wise. As the afternoon progressed, Angelo announced that he wanted some crack cocaine. The [petitioner] left the motel in Cooper's vehicle, purchased fifty dollars of crack cocaine, and returned to the motel room. Angelo proceeded to smoke three crack rocks using an aluminum can fashioned into a pipe. Two hours later, Terry Polidro arrived at the room. Terry and the [petitioner] left in Terry's vehicle to purchase an additional seventy-five dollars of crack cocaine. Angelo remained at the motel. Upon returning to the motel, the [petitioner] returned to his room, but Angelo left with Terry. The [petitioner] did not see Angelo the remainder of the evening. The [petitioner] maintains that Angelo's crack-induced state-of-hallucination resulted in the current charge against him.

In rebuttal, the State presented the testimony of Anthony Quinn Wilson. This witness testified that on the night of the shooting, the [petitioner] arrived at his residence after midnight trying to sell a silver and black .45-caliber handgun.

3

State v. William "Butch" Osepczuk, No. M1999-00846-CCA-R3-CD, 2001 WL 120716, at **1-2 (Tenn. Crim. App. Feb. 1, 2001), perm. to appeal denied (Tenn. June 18, 2001).

The *pro se* petition for post-conviction relief, which was subsequently amended by counsel, claimed, *inter alia*, that trial counsel had been ineffective in not interviewing state's witnesses "to determine all available defenses that could have possibly been raised;" in not filing "any meaningful pre-trial motions, other than a motion for discovery;" in "failing to [sic] any meaningful investigation of the case;" in failing "to make objection to the elements of the indictment and instruction of charge to the jury;" in failing to raise as an issue the "trial court's failure to instruct on lesser-included offenses;" in allowing "testimony and evidence . . . of an unrelated and uncharged offense;" in failing "to make timely objections, to preserve issues to be raised in [the] motion for new trial, as well as on direct appeal." Additionally, the petitioner claimed that the trial court had erred in not instructing "the jury on all possible lesser-included offenses." In counsel's amendment to the petition, it was alleged that trial counsel had been ineffective by "leaving in the middle of the trial" after learning that his wife and children had been seriously injured in an automobile accident, and, when trial resumed the next day, counsel "was unable to focus his full attention on the trial as his attention was divided between his injured family and his representation of Petitioner;" by not calling "numerous material witnesses;" and by failing to "impeach or inadequate impeachment of witness Anthony Quinn Wilson."

At the beginning of the evidentiary hearing on the petition, post-conviction counsel advised the court two claims were being pursued: the "failure to instruct on lesser included offenses," and "ineffective assistance of counsel." The only witness testifying at the hearing was the petitioner's trial counsel, who said that, prior to trial, he had "met several times" with the petitioner, in "[p]retty lengthy meetings," and obtained a list of possible witnesses. Counsel, who said that he "probably [had] done several dozen trials," testified at length as to his pretrial preparations, including witnesses' interviews. Asked about the accident during the trial, which had injured his wife and children, he responded, "I'm not going to say it didn't have some kind of effect on me, but I'm [sic] can't sit here and say I didn't call a witness because we didn't do that." In sum, he said, "I felt composed enough to come back in here and finish the trial." He said that, in every trial, "lesser included offenses are right at the top of my list of things to do because that is fertile ground for a lot of things." He said that he "probably had more success on lesser included instructions not being charged or jury instructions generally being charged incorrectly because that is just great stuff for appeal." He described the petitioner's trial as "not one of the cases from a defense perspective that would be acceptable in my view as an all-or-nothing charge." However, he could not recall what had occurred as to instructing the jury on lesser-included offenses. Asked if he should have raised it as an issue in the motion for new trial and on appeal, counsel responded, "I would think so, yeah," but added, "The only reason I wouldn't raise [it] . . . is if we agreed somewhere in the record that we didn't want the charge." On cross-examination, trial counsel said that his practice was "almost exclusively capital murder defense" for which he had been certified.

On appeal, the petitioner presents the claims that the trial court erred in not charging as to lesser-included offenses and that trial counsel was ineffective in failing "to call certain witnesses at

4

trial" and "to ask for lesser included offenses to be charged and then failed to include on the record the reason, if any, of [sic] why none were charged."

## ANALYSIS

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issues of deficient performance of counsel and possible prejudice to the defense are mixed questions of law and fact and, thus, subject to *de novo* review by the appellate court. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).

In order to determine the competence of counsel, Tennessee courts have applied standards developed in federal case law. See State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The United States Supreme Court articulated the standard in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), which is widely accepted as the appropriate standard for all claims of a convicted petitioner that counsel's assistance was defective. The standard is firmly grounded in the belief that counsel plays a role that is "critical to the ability of the adversarial system to produce just results." Id. at 685, 104 S. Ct. at 2063. The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Id. at 687, 104 S. Ct. at 2064. The Strickland Court further explained the meaning of "deficient performance" in the first prong of the test in the following way:

> In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. . . . No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of

5

legitimate decisions regarding how best to represent a criminal defendant.

Id. at 688-89, 104 S. Ct. at 2065. The petitioner must establish "that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms." House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (citing Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996)).

As for the prejudice prong of the test, the Strickland Court stated: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694, 104 S. Ct. at 2068; see also Overton v. State, 874 S.W.2d 6, 11 (Tenn. 1994) (concluding that petitioner failed to establish that "there is a reasonable probability that, but for counsel's errors, the outcome of the proceedings would have been different").

Courts need not approach the Strickland test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697, 104 S. Ct. at 2069; see also Goad, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

We note that when post-conviction proceedings have included a full evidentiary hearing, as was true in this case, the trial judge's findings of fact and conclusions of law are given the effect and weight of a jury verdict, and this court is "bound by the trial judge's findings of fact unless we conclude that the evidence contained in the record preponderates against the judgment entered in the cause." Black v. State, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990). The reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, see Strickland, 466 U.S. at 690, 104 S. Ct. at 2066, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). The fact that a strategy or tactic failed or hurt the defense does not alone support the claim of ineffective assistance of counsel. See Thompson v. State, 958 S.W.2d 156, 165 (Tenn. Crim. App. 1997). Finally, a person charged with a criminal offense is not entitled to perfect representation. See Denton v. State, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). As explained in Burns, 6 S.W.3d at 462, "[c]onduct that is unreasonable under the facts of one case may be perfectly reasonable under the facts of another."

As to the petitioner's claim that counsel was ineffective in failing to "call certain witnesses," as the issue is explained on appeal, the post-conviction court, among its detailed written findings of fact and conclusions of law, determined that counsel had testified that he "was not surprised by any witnesses called by the state or by their testimony at trial" and that "[n]o further testimony was offered to the Court by Petitioner as to how the testimony of any witness, not accounted for by [trial counsel], would have affected the outcome of the trial." Since, as the post-conviction court correctly notes, the petitioner did not present, at the post-conviction hearing, any of the witnesses whom he

claims would have been beneficial to his defense, the record supports the court's determination that he failed to show counsel was ineffective in this regard. See Black, 794 S.W.2d at 757 (stating that "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing. As a general rule, this is the only way the petitioner can establish that . . . the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the petitioner.").

We next will consider the petitioner's claim that trial counsel was ineffective for not raising as an issue the fact that the trial court had not instructed as to any lesser-included offenses of attempted first degree murder. As to this claim, the post-conviction court found that no lesser-included offenses had been charged, that this was not raised as an issue either in the motion for new trial or on appeal, and that not requesting such an instruction was "a tactical trial maneuver on [trial counsel's] part." Noting in brief the facts of the case, the court said the "evidence was overwhelming as to the planning and premeditation" to murder the victim, who sustained "grave, life-threatening injuries . . . when he was shot numerous times, beaten and clearly left for dead in a soybean field by [the petitioner] whom he positively identified." Thus, a reasonable jury would not have convicted him of other than attempted first degree murder. Accordingly, the post-conviction court determined, as to these issues, that the petitioner had failed to show either that trial counsel had been ineffective or that he had been prejudiced by counsel's actions. We will review these findings.

As the post-conviction court noted, and our supreme court explained in State v. Moore, 77 S.W.3d 132, 134 (Tenn. 2002), a trial court has a responsibility, regardless of whether counsel so requests, to instruct as to lesser-included offenses:

> [I]t is the duty of the trial judge to instruct the jury as to the law of a lesser-included offense if he or she determines that: (1) reasonable minds could accept the offense as lesser-included; and (2) the evidence is legally sufficient to support a conviction for the lesser-included offense. State v. Burns, 6 S.W.3d 453, 469 (Tenn. 1999). The judge shall instruct the jury on all lesser-included offenses notwithstanding a request from the defendant. Tenn. Code Ann. § 40-18-110(b) (1997 Repl.).

Id. (footnote omitted).

The question of whether a given offense should be submitted to the jury as a lesser-included offense is a mixed question of law and fact. State v. Rush, 50 S.W.3d 424, 427 (Tenn. 2001) (citing State v. Smiley, 38 S.W.3d 521 (Tenn. 2001)). The standard of review for mixed questions of law and fact is *de novo* with no presumption of correctness. Id.; see also Burns, 6 S.W.3d at 461.

In State v. Richmond, 90 S.W.3d 648 (Tenn. 2002), the court explained that overwhelming proof as to the greater offense does not obviate the necessity to instruct as to lesser offenses:

> [O]verwhelming evidence established defendant Richmond's participation in the robbery of Mose Cuxart and attempted robbery of Charles Stephen Earls. Likewise, evidence was overwhelming and uncontroverted that deadly weapons were involved. In proving the greater offenses, the State necessarily proved the lesser-included offenses. Therefore, a jury could have convicted the defendant of the lesser-included offenses of robbery and attempted robbery. As such, it was error for the trial court not to charge the lesser-included offenses of robbery and attempted robbery.

Id. at 662-63.

However, the court additionally explained that the fact that lesser offenses should have been charged, but were not, does not necessarily require a reversal of the conviction:

> [O]ur determination whether this error was harmless beyond a reasonable doubt hinges upon what a reasonable jury *would* have done in light of the evidence produced at trial. We hold that no reasonable jury would have convicted the defendant on the lesser-included offenses of robbery and attempted robbery instead of the charged offenses due to the uncontroverted and overwhelming evidence establishing the use of deadly weapons and his direct participation in the offenses. Any error was harmless beyond a reasonable doubt.

Id. at 663.

In the present appeal, we respectfully disagree with the post-conviction court's determination that trial counsel, as a tactical decision, had decided that he did not want lesser-included offenses to be charged to the jury. In fact, trial counsel testified that, although he could not recall his reasoning at the time, he believed he would have wanted lesser offenses to be charged, so the jury could make other than an "all-or-nothing" decision in a very brutal case. Further, the court had an independent responsibility, regardless of counsel's wishes, to instruct the jury as to lesser-included offenses. Attempted first degree murder, for which the petitioner was convicted, is defined as the attempt to commit a "premeditated and intentional killing of another," see Tenn. Code Ann. § 39-13-202(a)(1); while attempted second degree murder, which he argues should have been charged, is defined as a "knowing killing of another," see Tenn. Code Ann. § 39-13-210(a)(1). Given the brutality of the attack on the victim, and the fact that the petitioner and his codefendant left the victim only because they believed they had killed him, which was their intention, we conclude that no rational jury would have convicted the petitioner of any offense other than attempted first degree murder. Accordingly,

8

the record supports the post-conviction court's determination that the petitioner failed to show that he was prejudiced by the jury instructions.

## **CONCLUSION**

Based upon the foregoing authorities and reasoning, we affirm the denial of the petition for post-conviction relief.

_____

ALAN E. GLENN, JUDGE